**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **STACY NOZIME,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civ. No. MJM-26-0076** |
| **v.** | * | |
| | * | |
| **TRINITY PROPERTY CONSULTANTS, LLC, et al.,** | * | |
| | * | |
| | * | |
| **Defendants.** | * | |

* * * * * * * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Stacy Nozime ("Plaintiff") filed this civil action against Trinity Property Consultants, LLC ("Trinity Property") and FPACP3 Guilford, LLC ("FPACP3") (collectively, "Defendants") with the Circuit Court of Maryland for Baltimore City. ECF 3 ("Compl."). Plaintiff alleges negligence, breach of warranty of habitability, and nuisance based on Defendants' failure to make certain repairs in an apartment she previously rented from Defendants. *Id.* Defendants removed the case to this Court, ECF 1, and filed a motion to dismiss the Complaint, ECF 6. Plaintiff filed a response in opposition to the motion. ECF 7. A hearing is not necessary to resolve the motion. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the motion to dismiss is granted in part and denied in part, and Plaintiff's claim for punitive damages is dismissed without prejudice.

## I. FACTUAL BACKGROUND

Plaintiff is a former tenant of an apartment owned by FPACP3 and managed by Trinity Property. Compl. ¶¶ 4–5, 8–9. On or about December 16, 2022, Plaintiff signed a lease agreement

with FPACP3 for a term from August 21, 2023, to July 31, 2024. *Id.* at ¶ 8. On or about April 12, 2024, Plaintiff signed a second lease agreement with FPACP3 for a term from August 1, 2024, to July 31, 2025. *Id.* at ¶ 9. The lease in 2024 required Plaintiff to make monthly rent payments of $1,200. *Id.* Plaintiff moved out of the apartment in July 2025. *Id.* at ¶ 12.

In her Complaint, Plaintiff alleges that FPACP3 and Trinity failed to repair the lack of heat, air conditioning, and water in her apartment throughout her tenancy. *Id.* at ¶¶ 10–14. The heat in the apartment did not work for around one year and six months—from October 2023 to about March or April 2025. *Id.* at ¶ 11. In addition, the HVAC unit in the apartment malfunctioned, leaving her without air conditioning, for around one year and ten months—from September 2023 until July 2025. *Id.* at ¶ 12. Plaintiff had to purchase a personal fan to keep cool. *Id.* at ¶ 13. The water in the apartment would shut off at times throughout Plaintiff's tenancy, leaving her without water for around two to three days at a time on each occasion. *Id.* at ¶ 14. Plaintiff informed FPACP3 and Trinity of the lack of heat, air conditioning, and water in her apartment to no avail. *Id.* at ¶¶ 15–17. Defendants promised to make repairs but did not fix the problems adequately or in a timely manner. *Id.* at ¶ 17. Plaintiff further alleges that "Defendants had no intention of repairing the lack of heat, air conditioning, or water, or maintaining a habitable place for Plaintiff to live." *Id.* ¶ 18.

Plaintiff asserts that Defendants' action and inactions caused her to suffer economic damages, including rent paid while her apartment lacked heat, air conditioning, and water. *Id.* at ¶ 19. She also alleges that she suffered emotional distress with physical manifestations due to these conditions. *Id.*

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation modified). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*). When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

A defendant may move to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed in one of two ways: either a facial challenge . . . or a factual challenge." *Id.* (citation modified). A facial challenge "assert[s] that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.* A defendant's facial challenge "will be

evaluated in accordance with the procedural protections afforded under Rule 12(b)(6), which is to say that the facts alleged in the Complaint will be taken as true . . . ." *Est. of Jones v. Md. Dept. of Pub. Safety*, Civ. No. JRR-21-01889, 2024 WL 493269, at *2 (D. Md. Feb. 8, 2024) (citing *Kerns v. United States*, 585 F.3d 187, 192–93 (4th Cir. 2009), and *Trump*, 416 F. Supp. 3d at 479). A factual challenge, on the other hand, asserts "that the jurisdictional allegations of the complaint are not true." *Trump*, 416 F. Supp. 3d at 479 (citation modified) (quoting *Kerns*, 585 F.3d at 192). In a factual challenge, the court "is entitled to decide disputed issues of fact with respect to subject matter jurisdiction. . . . In that circumstance, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.* (citation modified). If the court determines at any time that it lacks subject-matter jurisdiction, Rule 12(h)(3) requires that the court "dismiss the action." Fed. R. Civ. P. 12(h)(3). But, under 28 U.S.C. § 1447, an action removed from state court "shall be remanded[]" if, at any point before final judgment, the federal court determines that it "lacks subject matter jurisdiction" over the case. 28 U.S.C. § 1447(c).

## III. DISCUSSION

### A. Warranty of Habitability

Plaintiff asserts a claim against Defendants under the Maryland Tenant Safety Act of 2024 for breach of the warranty of habitability. Defendants argue that the claim should be dismissed because Md. Code Ann., Cts. & Jud. Proc. ("CJP") § 4-401 deprives this Court of jurisdiction to adjudicate the claim and the claim is moot.

#### 1. Mootness

The Court rejects Defendants' contention that Plaintiff's claim for breach of the warrant of habitability is moot.

Article III of the United States Constitution limits a federal court's jurisdiction to "cases" or "controversies." U.S. Const. Art. III, § 2. An issue is moot when there is no longer an existing controversy between the parties, thus making it "impossible for [the] court to grant any effectual relief whatever to a prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)); *see also Att'y Gen. v. Anne Arundel Cnty. Sch. Bus Contractors Ass'n, Inc.*, 407 A.2d 749, 752 (1979) (defining mootness as a question that "at the time it is before the court, there is no longer an existing controversy between the parties, so that there is no longer any effective remedy which the Court can provide."); *Alston v. State*, 433 Md. 275, 285 (2013) ("The Maryland law of mootness is well-settled.").

Here, the issue of whether Defendants breached the warranty of habitability under Maryland law remains a live controversy between the parties because the court may grant effective relief to Plaintiff. Under the Maryland Tenant Safety Act, "[a] landlord that offers a residential dwelling unit for rent, whether by written or oral lease agreement, shall be deemed to warrant that the dwelling unit is fit for human habitation." Md. Code Ann., Real Prop. ("RP") § 8-212(c). This warranty of habitability "exists at the beginning of the tenancy and continues throughout the term of the tenancy." *Id.* § 8-212(d). "Tenants may enforce this warranty affirmatively, through a private right of action for damages and rent abatement, . . . or defensively, by refusing to pay rent and raising breach of warranty as a defense in any landlord action to recover rent or possession," *Wilson v. Tanglewood Venture, LP*, 347 A.3d 405, 412 (Md. 2025) (citing RP § 8-212(g)(1)(i),(ii)), and a court may award "actual damages[,]" among other forms of relief, RP § 8-212(i).

In this case, Plaintiff seeks actual damages for Defendants' alleged breach of the warranty of habitability, and the statute allows a court to grant this relief. As such, the case is not moot. Contrary to Defendants' arguments, the statute does not preclude a tenant from seeking monetary

relief for past injuries arising from a breach of the warranty of habitability. The statute expressly states that "[r]elief for breach of the warranty of habitability under this section may not be conditioned on payment by the tenant of rent into escrow with the court." RP § 8-212(e). Thus, Defendants' assertion that a remedy is no longer available to Plaintiff is without merit.

Defendants' reliance on *Wilson* is misplaced. The merits issue in *Wilson* was whether a court may require a tenant of an unlicensed unit to pay rent into escrow under the rent escrow statute, RP § 8-211, upon the landlord's request. 347 A.3d at 408–09. The court determined that the issue was moot because the tenants had vacated the premises and the landlord no longer intended to collect rent for the unlicensed period. *Id.* at 409. "With Tenants having no possessory interest remaining in the property, there is no rent to abate, and Landlord presently owes Tenants no duty to fix the problems in their former units." *Id.* Here, in contrast, the issue is whether a tenant may recover actual damages from a landlord for breaches of the warranty of habitability that occurred during tenancy. There is no rent escrow issue here. In *Wilson*, the court declined to examine the case under the Maryland Tenant Safety Act because the legislation was enacted during pendency of the litigation any effect it had on tenants' rights "under RP § 8-211 was not briefed or argued" in the lower courts. *Id.* at 412. Here, Plaintiff's cause of action arises from that statute and therefore calls for an examination under the statute's provisions. As explained above, the statute provides a cause of action for breach of the warranty of habitability with no condition that a tenant pay rent into an escrow account. *See* RP § 8-212(e). Therefore, a remedy remains available to Plaintiff and remains contested. Therefore, the Court concludes that Plaintiff's claim for breach of the warranty of habitability is not moot.[1]

[1] Defendants do not dispute that Plaintiff's warranty-of-habitability claim is sufficiently pleaded.

**2. Subject-Matter Jurisdiction**

Defendants' argument that this Court lacks jurisdiction to hear Plaintiff's warranty-of-habitability claim CJP § 4-401 also lacks merit.

Federal district courts are courts of limited subject-matter jurisdiction; we possess "only that power authorized by [the federal] Constitution and [federal] statute[s]." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, (1994)). Relevant here, 28 U.S.C. § 1332(a) gives this Court "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between citizens of different States[.]" When exercising this diversity jurisdiction, "[f]ederal courts . . . must apply state substantive law." *Near v. Enerco Grp., Inc.*, 182 F.4th 341, 353 (4th Cir. 2026) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 67 (1938)). But, [i]n determining its own jurisdiction," a federal court "must look to the sources of its power"—that is, "the constitution and laws of the sovereignty which created it[]"—not the acts of a state legislature. *Markham v. City of Newport News*, 292 F.2d 711, 713, 716 (4th Cir. 1961).

> The laws of a state cannot enlarge or restrict the jurisdiction of the federal courts or those of any other state. It necessarily follows that whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States.[]

*Id.* (footnote omitted); *see also Dearden v. Titus*, Civ. No. ELH-22-843, 2022 WL 3100748, at *6 (D. Md. Aug., 4, 2022) (quoting *Markham*, 292 F.2d at 713, 716).

It its jurisdictional challenge here, Defendants cite CJP § 4-401(4), which, with noted exceptions, gives Maryland district courts "exclusive original civil jurisdiction in . . . [a]n action involving landlord and tenant, . . . regardless of the amount involved[.]" But, again, a state statute "cannot enlarge or restrict the jurisdiction of the federal courts[,]" and a federal district court may

adjudicate any substantive right created by state law that may be enforced in a judicial proceeding under state law, as long as the federal district court "has jurisdiction under the Constitution and laws of the United States." *Markham*, 292 F.2d at 716; *see also Dearden v. Titus*, 2022 WL 3100748 at *7 ("[I]f R.P. § 14-107(a) is construed to limit sale in lieu of partition actions exclusively to the Maryland circuit courts, this provision cannot, consistent with the Constitution, limit the subject matter jurisdiction of this Court."). Therefore, the Court rejects Defendants' argument that CJP § 4-401 deprives this Court of jurisdiction.[2]

**B. Negligence**

Defendants argue that Plaintiff's claim for negligence should be dismissed because Plaintiff fails to identify a duty Defendants owed her that they breached and "makes bare assertions as to the damages" with insufficient facts supporting her claims. ECF 6 at 5. In response, Plaintiff argues that she pleaded sufficient facts to demonstrate that Defendants owed her a duty "to repair or remedy a defect in a rental property independent of any lease agreement[,]" ECF 7 at 6, and the facts contained in her Complaint demonstrate that she suffered damages, *id.* at 8–9.

To state a claim for negligence in Maryland, a plaintiff must allege: "1) that the defendant was under a duty to protect the plaintiff from injury, 2) that the defendant breached that duty, 3) that the plaintiff suffered actual injury or loss, and 4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Steamfitters Local Union No. 602 v. Erie Ins. Exchange*, 233 A.3d 59, 72 (Md. 2020) (quoting *Rowhouses, Inc. v. Smith*, 133 A.3d 1054, 1066 (Md. 2016) (citation modified)). At issue here are the duty and damages elements.

[2] It is odd that Defendants present this jurisdictional argument, having removed this case from state court to this Court. If this Court lacked subject-matter jurisdiction to adjudicate this case, then removal would have been improper, and, as Plaintiff points out, the proper course would have been remand—not dismissal. *See* 28 U.S.C. § 1447(c); ECF 7 at 9.

In Maryland, "[a]t common law and in the absence of a statute, a landlord ordinarily has no duty to keep rental premises in repair, or to inspect the rental premises either at the inception of the lease or during the lease term." *Wells v. Pennrose Mgmt. Co.*, 753 F. Supp. 3d 432, 439 (D. Md. 2024) (quoting *Hector v. Bank of New York Mellon*, 251 A.3d 1102, 1115 (Md. 2021)) (internal quotation marks omitted). "The principal rationale for the general rule that the landlord is not ordinarily liable for injuries caused by defects or dangerous conditions in the leased premises is that the landlord has parted with control[.]" *Matthews v. Amberwood Assocs. Ltd. P'ship, Inc.*, 719 A.2d 119, 125 (Md. 1998) (citing *Marshall v. Price*, 161 A. 172, 172 (Md. 1932) (internal quotation marks omitted)), and a landlord is generally not liable for a dangerous condition in the leased premises that "comes into existence after the tenant has taken possession[,]" *id.* at 124 (citing *Marshall*, 161 A. at 172). So, "a landlord is not ordinarily liable to a tenant or guest of a tenant for injuries from a hazardous condition in the leased premises that comes into existence after the tenant has taken possession." *Phillips v. Pratibha*, Civ. No. EA-24-3532, 2026 WL 491521, at *3 (D. Md. Feb. 20, 2026) (quoting *Matthews*, 719 A.2d at 124). But this general principle "is not absolute and has exceptions." *Jane Doe YD v. Bd. of Trustees of Mt. St. Mary's Univ.*, Civ. No. JKB-25-2841, 2026 WL 2445427, at *8 (D. Md. Aug. 20, 2026) (quoting *Matthews*, 719 A.2d at 124).

Under Maryland law, "whether a landlord owes a duty to his or her tenants and their guests with respect to dangerous or defective conditions on the property, of which the landlord has notice, depends upon the circumstances presented." *Matthews*, 719 A.2d at 123. "Where there is evidence of 'explicit notice of the defect, recognition by the landlord of its dangers[,] and ample opportunity to remedy it,' a tenant may maintain an action in tort liability 'for injuries sustained as a result of an uncorrected defect in rented quarters if there was a contractual obligation to repair the particular

defect and a reasonable opportunity to correct it.'" *Heym v. APG Hous., LLC*, No. 1:23-CV-02092-JRR, 2024 WL 2302306, at *6 (D. Md. May 21, 2024) (quoting *Farley v. Yerman*, 190 A.2d 773, 775 (Md. 1963)); *see also Wells*, 753 F. Supp. 3d at 439. "[W]hen a landlord has agreed to make repairs there is a duty resting on him to do so, and upon his failure the tenant may either sue on his contract or bring an action on the case founded in tort for neglect of that duty." *Wells*, 753 F. Supp. 3d at 439 (quoting *Bocchini v. Gorn Mgmt. Co.*, 515 A.2d 1179, 1187 (Md. Ct. Spec. App. 1986)); *see also Thompson v. Clemens*, 53 A. 919, 920–21 (Md. 1903); *McKenzie v. Egge*, 113 A.2d 95, 97–98 (Md. 1955); *Heym*, 2024 WL 2302306 at *6.

"Recently, courts in this District have held that allegations like those that Plaintiff[] make[s] here are sufficient to survive a motion to dismiss." *Wells*, 753 F. Supp. 3d at 439 (citing *Heym*, 2024 WL 2302306 at *5). Here, Plaintiff asserts that she entered two consecutive lease agreements with FPACP3 requiring her to make rent payments, Compl. ¶¶ 8–9, and that Defendants had duties to provide a safe living space and "to repair known issues within the Apartment and to repair issues to which Plaintiff notified them[,]" *id.* ¶¶ 21–22. The latter legal conclusion is supported by Plaintiff's allegations that she "communicated with Defendants about the lack of heat, air conditioning and water in the Apartment[,]" "Defendants promised Plaintiffs the repairs would be made[,]" and, ultimately, Plaintiff paid rent "for an uninhabitable apartment.[.]" *Id.* ¶¶ 15, 17, 19, 26. It is at least plausible, under Maryland law, that, with the notice Plaintiff provided, Defendants' promises constituted an agreement sufficient to support a duty to make repairs. *See Farley*, 190 A.2d at 775; *McKenzie*, 113 A.2d at 97–98; *Bocchini*, 515 A.2d at 1187. Drawing reasonable inferences in Plaintiff's failure, her rent payments while the apartment was uninhabitable plausibly served as consideration for Defendants' promises to make repairs, giving rise to "an obligation to use reasonable care to make the repairs, for the negligent breach of

which there is a tort liability[.]" *McKenzie*, 113 A.2d at 97; *see also id.* at 98–99 (finding, in the circumstances of that case, "the payment of rent and continued occupancy [to be] a sufficient benefit moving to the promisor to constitute a legal consideration, even in the absence of a direct threat by her or request by the landlord").[3] Plaintiff further alleges that Defendants breached that duty in failing to make timely and adequate repairs, and this failure resulted in damages, including lost rent payments for an uninhabitable apartment and "emotional distress with physical manifestations." Compl. ¶¶ 19, 26. Drawing reasonable inferences in Plaintiff's favor, the Court finds the allegations in the Complaint sufficient to state a plausible negligence claim.

**C. Nuisance**

Finally, the parties dispute whether the Complaint meets applicable pleading requirements to support Plaintiff's private nuisance count and claim for punitive damages based on private nuisance.

Maryland law provides a cause of action in private nuisance against a defendant for any "nontrespassory invasion of another's interest in the private use and enjoyment of the land." *Rosenblatt v. Exxon Co.*, 642 A.2d 180, 190 (Md. 1994) (quoting Restatement (Second) of Torts § 821D (1979)). To establish a private nuisance claim, a plaintiff must show that the non-trespassory invasion was both unreasonable and substantial interference and that the resulting harm was objectively reasonable to the ordinary person. *See Meadowbrook Swimming Club v. Albert*, 197 A. 146, 148 (Md. 1938); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 95–96 (Md. 2013). In a recent decision, the Maryland Supreme Court held that private nuisance claim "requires that the

[3] The court in *McKenzie* recognized that "any benefit moving to the promisor" may constitute sufficient consideration "if it is not one which the opposite party was already legally bound to render." *Id.* at 98. While Plaintiff's lease agreements obligated her to make rent payments, the Maryland Tenant Safety Act, which became effective in October 2024, provides that "[i]f a landlord breaches the warranty of habitability under [the Act]" and fails "to make the repairs or correct the conditions, . . . after a reasonable time . . . , the tenant may . . . [r]efuse to pay rent . . . ." RP § 8-212(g)(1)(ii).

defendant engage in wrongful conduct." *Mayor & City Council of Baltimore v. Abel*, 361 A.3d 1090, 1114 (Md. 2026). The court recognized that "[a] private nuisance claim may arise from more than one type of conduct[,]" which may include "conduct that is negligent, reckless, or abnormally dangerous." *Id.* But even "[w]here the defendant's conduct . . . is not otherwise negligent, reckless, or abnormally dangerous," it "may be considered wrongful because it creates a continuous or recurring and unreasonable intrusion onto a plaintiff's use and enjoyment of his or her property." *Id.* Thus, "Maryland's private nuisance law encompasses a wide swath of conduct for which we have determined that a defendant is liable when such conduct causes a significant, unreasonable invasion of a plaintiff's reasonable use and enjoyment of land." *Id.* at 1100.

As explained in Part III.B *supra*, the Court finds the allegations in the Complaint sufficient to suggest that Defendants engaged in negligent conduct when, after receiving notice about the lack of heat, air conditioning, and water, and after promising to make repairs, Defendants failed and refused to do so, and Plaintiff was harmed as a result. Plaintiff's allegations support a reasonable inference that Defendants had the ability and duty to make repairs but ultimately breached that duty, and that breach caused an unreasonable intrusion into Plaintiff's use and enjoyment of the apartment created by the lack of heat, air conditioning, and water. As Plaintiff points out, Maryland's intermediate appellate court has recognized that a landlord may be liable for private nuisance when it is "in a position to resolve" an unreasonable and substantial interference with the use and enjoyment of property but wrongfully fails to do so, resulting in harm. *See Bocchini*, 515 A.2d at 1190. The Complaint includes sufficient facts to state a plausible cause of action for private nuisance.

However, Plaintiff's allegations do not suffice to support a plausible claim for punitive damages. "Since punitive damages are assessed for punishment and not reparation, a positive

element of *conscious* wrong doing is always required. Mere negligence or careless behavior is not sufficient." *See Exxon Corp v. Yarema*, 516 A.2d 990, 1007 (Md. Ct. Spec. App. 1986) (emphasis added) (citation omitted). The Maryland Supreme Court has "characterized actual malice as 'the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff.'" *Miller v. Schaefer*, 559 A.2d 813, 817 (Md. Ct. Spec. App. 1989), *aff'd*, 322 Md. 297, 587 A.2d 491 (1991) (quoting *H & R Block, Inc. v. Testerman*, 338 A.2d 48, 52 (Md. 1975)). "In contrast, implied or legal malice is defined as 'conduct of an extraordinary nature characterized by a wanton or reckless disregard for the rights of others.'" *Exxon*, 516 A.2d at 1008 (quoting *Wedeman v. City Chevrolet Co.*, 366 A.2d 7, 13 (Md. 1976)). "Wanton and reckless conduct requires far more than mere negligence, or what may be . . . inferred from it." *Id.* at 1008 (quoting *American Laundry Machine Industries v. Horan*, 412 A.2d 407, 420 (1980)). Maryland courts apply an implied malice standard to claims for punitive damages based on a private nuisance. *See id.*

The facts in the Complaint do not support a reasonable inference that Defendants acted either with "a wanton or reckless disregard" for Plaintiff's rights or with "an evil or rancorous motive influenced by hate . . . to deliberately and willfully injure [Plaintiff]." *Exxon*, 516 A.2d at 1007, 1008 (citations omitted). The Complaint offers no factual support for its bare assertion that "Defendants had no intention of repairing the lack of heat, air conditioning, or water, or maintaining a habitable place for Plaintiff to live." Compl. ¶ 18. To the contrary, Plaintiff alleges that Defendants made promises that "the repairs would be made." *Id.* at ¶ 17. At best, the well-pleaded facts in the Complaint support mere negligence; they are not sufficient to demonstrate or imply malice. Accordingly, Plaintiff's claim for punitive damages is dismissed without prejudice.

## IV. ORDER

For the reasons stated herein, it is by the United States District Court for the District of Maryland hereby ORDERED that:

1. Defendants' Motion to Dismiss the Complaint (ECF 6) is GRANTED IN PART and DENIED IN PART;
2. Plaintiff's claim for punitive damages is DISMISSED WITHOUT PREJUDICE;
3. Defendants' motion is DENIED as to all other claims.

_September 30, 2026___
Date

/S/
Matthew J. Maddox
United States District Judge